AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

STACEY HALL,

**SUMMONS IN A CIVIL ACTION**

V.

MERCK & CO., INC., a New Jersey corporation,

CASE NUMBER:

TO: (Name and address of Defendant)

Merck & Co., Inc. A New Jersey Corporation
One Merck Drive
Whitehouse Station, NJ 08889

08 CV 03504

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Tina B. Nieves
GANCEDO & NIEVES LLP
418 N. Fair Oaks Ave, Suite 202
Pasadena, CA 91103
(626) 685-9800

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

APR 1 0 2008

| CLERK | | DATE |

(By) DEPUTY CLERK

1  Hector G. Gancedo, SBN 132139
   Tina B. Nieves, SBN 134384
2  GANCEDO & NIEVES LLP
   418 N. Fair Oaks Avenue, Suite 202.
3  Pasadena, California 91103
   626/685-9800
4  626/685-9808 (Fax)

5

6  Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

08 CV 03504

RECEIVED
APR 10 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Fosamax Products Liability Litigation: | MDL No. 1789 |
| STACEY HALL, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. Strict Liability- Failure to Warn<br>2. Negligence |
| MERCK & CO., INC., a New Jersey corporation, | 3. Breach of Implied Warranty<br>4. Breach of Express Warranty<br>5. Deceit by Concealment |
| Defendant. | 6. Negligent Misrepresentation |

**DEMAND FOR JURY TRIAL**

18

## INTRODUCTION

19      This case involves the prescription drug Fosamax, which was manufactured, sold,
20  distributed and promoted by Defendant Merck & Co., Inc. as a treatment for osteoporosis,
21  Paget's Disease, and other conditions. Defendant misrepresented that Fosamax was a
22  safe and effective treatment for these conditions, when in fact the drug causes
23  osteonecrosis and osteonecrosis of the jaw, a serious and disfiguring medical condition.
24

## JURISDICTION AND VENUE

25      1.    The jurisdiction of this Court over the subject matter of this action is
26  predicated on 28 USC Section 1332. The amount in controversy exceeds $75,000.00,
27  exclusive of interest and costs. Venue in this Court is proper pursuant to 28 U.S.C. §1391
28  in that substantial part of the events or omissions giving rise to the claims asserted herein

1

COMPLAINT

1    occurred in this District, and Defendant is subject to personal jurisdiction in this District.

2    **GENERAL ALLEGATIONS**

3    2.    This action is an action for damages brought by Plaintiff who suffered
4    injury as a result of being prescribed and ingesting Fosamax. Fosamax is a prescription
5    drug which was tested, studied, researched, evaluated, endorsed, designed, formulated,
6    compounded, manufactured, produced, processed, assembled, inspected, distributed,
7    marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise
8    placed in the stream of interstate commerce by Defendant.

9    3.    The injuries and damages to Plaintiff were caused by the wrongful acts,
10   omissions, and fraudulent misrepresentations of Defendant.

11   4.    At all times relevant, Defendant was engaged in the business of, or was
12   successor in interest to, entities engaged in the business of research, licensing, designing,
13   formulating, compounding, testing, manufacturing, producing, processing, assembling,
14   inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for
15   sale or selling Fosamax for the use and ingestion by Plaintiff.

16   5.    At all times relevant, Defendant was authorized to do business within the
17   state of California.

18   6.    At all times relevant, the officers and directors of the Defendant named
19   herein participated in, authorized and directed the production and promotion of Fosamax
20   when they knew, or with the exercise of reasonable care should have known, of the
21   hazards and dangerous propensities of the product and thereby actively participated in the
22   tortious conduct which resulted in the injuries suffered by Plaintiff.

23   7.    Plaintiff files this lawsuit within the applicable limitations period of first
24   suspecting that Fosamax was the cause of any appreciable harm sustained by Plaintiff.
25   Plaintiff could not, by the exercise or reasonable diligence, have discovered the wrongful
26   cause of Plaintiff's injuries at an earlier time because the injuries were caused without
27   perceptible trauma or harm, and when Plaintiff's injuries were discovered, their cause was
28   unknown to Plaintiff.

2

COMPLAINT

8.    Additionally, Plaintiff was prevented from discovering this information sooner because Defendant misrepresented and continues to misrepresent to the public and to the medical profession that Fosamax is safe and free from serious side effects, and Defendant have fraudulently concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

## THE PARTIES

### Plaintiff

9.    Plaintiff, STACEY HALL, is a citizen of the United States and a resident of Valley Head, Alabama. She took Fosamax manufactured, supplied and/or marketed by Defendant, and was injured as a result.

### Defendant

10.    Defendant MERCK & CO., INC. was and is an American pharmaceutical company, incorporated under the laws of the state of New Jersey, whose principal place of business is One Merck Drive, P.O. Box 103, Whitehouse Station, New Jersey.  On information and belief, said entity does business in California, and at all times relevant it developed, manufactured, and sold Fosamax in interstate commerce and in California.

11.    At all times relevant, Defendant did test, study, research, evaluate, endorse, design, formulate, compound, manufacture, produce, process, assemble, inspect, distribute, market, label, promote, warn, package, advertise for sale, prescribe, sell and distribute, or otherwise place in the stream of interstate commerce, Fosamax, which was ingested by Plaintiff.

## FACTUAL BACKGROUND

12.    The compound alendronate is marketed by Defendant as Fosamax. Fosamax is a member of the bisphosphonate class of drugs.  The Food and Drug Administration approved Fosamax on September 29, 1995 for the treatment of post-menopausal osteoporosis and Paget's disease.  Subsequent to FDA approval, Fosamax was widely promoted, advertised and marketed by Defendant as a safe and effective medication.

3

COMPLAINT

13.     Osteoporosis is a thinning and weakening of bones through the natural process of bone remodeling. In bone remodeling, osteoclasts (bone-eroding cells) break down bone through resorption, and osteoblasts (bone-building cells) build bone back up again through bone formation. These processes usually are in balance and a stable bone mass is maintained. Osteoporosis occurs when the formation of new bone does not keep up with bone destruction and bones become weak and fragile. As a bisphosphonate, Fosamax is designed to suppresses bone resorption by inactivating bone-eroding osteoclast cells thus preserving bone density.

14.     As osteoporosis is a common and widespread disease, the market for osteoporosis treatments is enormous. Nearly 200 million women worldwide suffer from osteoporosis – approximately one-third of women aged 60-70 and two-thirds of women over the age of 80. In the United States, approximately 44 million Americans are at risk for developing osteoporosis (approximately 55% of Americans 50 years old or older) and current estimates are that 10 million Americans currently have the disease with 34 million estimated to have low bone mass, putting them at great risk for the disease.[1]

15.     Today, the "global osteoporosis market exceeds $6 billion in annual sales, and with a rapidly graying population, it's growing 25% a year."[2] Defendant commands a large share of the osteoporosis treatment market with Fosamax, the second best selling drug for the company with annual sales in excess of $3.2 billion dollars.

16.     According to IMS Health, more than 22 million prescriptions were written for Fosamax in 2005, up 2% from 2004.[3] Defendant's Fosamax continues to make IMS

---

[1] Statistics are from National Osteoporosis Foundation, available online at: http://www.nof.org/osteoporosis/diseasefacts.htm.

[2] See Business Week Online, "Rebuilding Amgen's Bones; A mass-market osteoporosis drug could help reassure antsy investors," May 15, 2006, available online at: http://www.businessweek.com/magazine/content/06_20/b3984089.htm?chan=search.

[3] See IMS Health's "Leading 20 Products by Total U.S. Dispensed Prescriptions" available online at: http://www.imshealth.com/ims/portal/front/articleC/0,2777,6599_73914140_77250364,00.html.

4

COMPLAINT

1 Health's "Leading 20 Products by Total U.S. Dispensed Prescriptions" and it is the
2 world's best-selling osteoporosis treatment. Defendant launched an aggressive
3 advertising campaign for Fosamax, which paid off causing physician visits for
4 osteoporosis to nearly double.[4]  Capitalizing on the increased attention to osteoporosis, in
5 2005 Defendant obtained approval for an additional drug in the Fosamax family, Fosamax
6 Plus D, which claims to have the additional value of providing a "minimum vitamin D
7 intake consistent with the recommended guidelines..."[5]

8       17.    Bisphosphonates are divided into two classes of agents based on their
9 chemical structure and molecular mechanism of action -- simple bisphosphonates where
10 there is no nitrogen functionality in their structure, and more potent nitrogen-containing
11 bisphosphonates. Nitrogenous bisphosphonates are 10-100 times more potent at
12 inhibiting bone resorption than simple bisphosphonates.

13       18.    Fosamax is a nitrogenous bisphosphonate.  It is not metabolized in humans.
14 The presence of a primary nitrogen atom in the molecule, and the non-metabolizing
15 nature of the compound, results in Fosamax having a terminal half-life of more than ten
16 years, which can result in a massive cumulative dose over the multi-year dosing cycle.

17       19.    In the 1990s and 2000s, medical articles and studies were published
18 reporting the occurrence of osteonecrosis (bone death) and osteonecrosis of the jaw
19 ("ONJ") when nitrogenous bisphosphonates were used in the treatment of cancer.
20 Defendant knew or should have known that Fosamax, as a nitrogenous bisphosphonate,
21 shared the mechanism of action and the adverse event profiles with similar drugs within
22 the nitrogenous subclass.

23 _____

24    [4] See Consumer Reports, "Free rein for drug ads? A slowdown in FDA review has left
consumers more vulnerable to misleading messages", February 2003, available online at:
25 http://www.consumerreports.org/cro/health-fitness/drugs-supplements/drug-ads-203/overview/in
26 dex.htm.

27    [5] See Merck and Company, Inc.'s 2005 Annual Report, Financial Section, p. 23, available
online at:
28 http://www.merck.com/finance/annualreport/ar2005/pdf/Merck_2005_Financial_Section.pdf.

COMPLAINT

20.    More specifically, Defendant knew or should have known that the osteoclast-inhibiting effect of Fosamax leads to cessation of bone remodeling and bone turnover, and induces cumulative ischemic changes to the human mandible (lower jaw) and maxilla (upper jaw).

21.    Defendant knew or should have known that these properties compromise the vascular supply to the area, which reduces the ability of a minor injury or disease to heal, which, in turn, can lead to osteonecrosis and osteomyelitis (bone marrow inflammation).

22.    ONJ is a serious medical condition that can result in significant disability such as irreversible joint collapse in the jaw. Bone death as in ONJ is typically not reversible, and consequently physicians are limited to easing patient's pain and preventing the necrosis from spreading.

23.    After Defendant began selling Fosamax, reports of osteonecrosis, ONJ, and other dental complications among its users began to surface. The early evidence indicated that Fosamax shared the class effects of all nitrogenous bisphosphonates, yet Defendant declined to conduct further study of the risk of osteonecrosis and ONJ in Fosamax users. Rather than evaluating and verifying the safety of Fosamax with respect to ONJ, Defendant sought to broaden the uses of Fosamax, including expanding approval to Fosamax D, and sought to extend the exclusivity of the patent for Fosamax through 2018.

24.    Since the launch of Fosamax in 1995, the Food and Drug Administration ("FDA") has received a significant number of reports of osteonecrosis and ONJ among users of nitrogenous bisphosphonates in general, and Fosamax specifically. In 2004, the FDA reported the results of their review of the FDA adverse events database for bisphosphonates and concluded that the risk of osteonecrosis and ONJ was not limited to intravenous nitrogenous bisphosphonates used in the treatment of cancer, but also to Fosamax, an oral medication which shares the same mechanism of action as intravenous bisphosphonates. The FDA concluded that osteonecrosis was a class effect based on the

COMPLAINT

1  reported cases involving Fosamax.

2      25.    Citing a continuing safety concern for Fosamax and intravenous

3  bisphosphonates, the FDA recommended and stated that Fosamax should include a

4  warning on the label to alert unsuspecting physicians and consumers of the risk of

5  osteonecrosis. Defendant has ignored the FDA's recommendation and refused to include

6  any type of warning for osteonecrosis on its label or otherwise to this day. Physicians

7  continue to prescribe Fosamax without knowledge of the serious risk of osteonecrosis,

8  and consumers continue to take the medication believing there is no such risk. Indeed,

9  Defendant continues to defend Fosamax and downplay unfavorable findings.

10     26.    At the time Plaintiff and other Fosamax consumers took the drug, there

11  were other safer alternative treatments for their osteoporosis condition.

12     27.    Defendant knew of the significant risk of osteonecrosis, and specifically

13  ONJ, but did not adequately and sufficiently warn physicians and consumers, including

14  Plaintiff, of the risks.

15     28.    As a direct result, Plaintiff was prescribed Fosamax by her physician, and

16  ingested Fosamax as prescribed and in a foreseeable manner for a long period of time

17  without knowledge of its dangerous side effects. Plaintiff has suffered serious injury

18  from the ingestion of Fosamax, and requires and will require in the future ongoing

19  medical care and treatment.

20     29.    As a direct result, Plaintiff suffered severe mental and physical pain and

21  suffering and has sustained permanent injuries and emotional distress.

22     30.    As a direct result, Plaintiff sustained economic loss, including loss of

23  earnings and diminution or loss of earning capacity.

24     31.    If Plaintiff had known the risks and dangers associated with Fosamax®,

25  Plaintiff would not have taken Fosamax and consequentially would not have been subject

26  to its serious side effects.

27     32.    As a result of defendant's actions, Plaintiff and her prescribing physicians

28  were unaware, and could not have reasonably known or have learned through reasonable

7

COMPLAINT

1  diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that
2  those risks were the direct and proximate result of Defendant's acts, omissions, and
3  misrepresentations.

4  ## FIRST CLAIM FOR RELIEF
5  ## STRICT LIABILITY - FAILURE TO WARN
6      33.    Plaintiff incorporates by reference to all preceding paragraphs as if fully set
7  forth herein.

8      34.    Defendant is manufacturer and/or supplier of Fosamax.
9      35.    The Fosamax manufactured and/or supplied by Defendant was and is
10  unaccompanied by proper warnings regarding all possible adverse side effects associated
11  with the use of Fosamax and the comparative severity and duration of such adverse
12  effects; the warnings given did no accurately reflect the symptoms, scope or severity of
13  the side effects.

14      36.    Defendant failed to perform adequate testing in that adequate testing would
15  have shown that Fosamax possessed serious potential side effects with respect to which
16  full and proper warnings accurately and fully reflecting symptoms, scope and severity
17  should have been made, with respect to the use of this drug.

18      37.    The Fosamax manufactured and/or supplied by Defendant was defective
19  due to inadequate post-marketing warning or instruction because, after the manufacturer
20  knew or should have known of the risk of injury from Fosamax, it failed to provide
21  adequate warnings to users or consumers of the product and continued to aggressively
22  promote the product.

23      38.    As the producing cause and legal result of the defective condition of
24  Fosamax as manufactured and/or supplied by Defendant, and as a direct and legal result
25  of the negligence, carelessness, other wrongdoing and action(s) of Defendant described
26  herein:

27          (a)    Plaintiff has been injured in health, strength and activity and suffered
28  injuries to body and mind, the exact nature and extent of which are not known at this

8

COMPLAINT

1  time;

2      (b)    Plaintiff sustained economic loss, including loss of earnings and
3  diminution or loss of earning capacity, the exact amount of which is presently unknown;

4      (c)    Plaintiff required reasonable and necessary health care, attention and
5  services and did incur medical, health, incidental and related expenses.  Plaintiff is
6  informed and believes and thereon alleges said plaintiff may in the future be required to
7  obtain medical and/or hospital care, attention, and services in an amount as yet
8  unascertained.

9              **SECOND CLAIM FOR RELIEF**
10                  **NEGLIGENCE**

11      39.    Plaintiff incorporates by reference all preceding paragraphs as if fully set
12  forth herein.

13      40.    Defendant had a duty to exercise reasonable care in the manufacture, sale
14  and/or distribution of Fosamax into the stream of commerce, including a duty to assure
15  that the product did not cause users to suffer from unreasonable, dangerous side effects.

16      41.    Defendant failed to exercise ordinary care in the manufacture, design,
17  formulation, distribution, production, processing, assembly, inspection, marketing,
18  labeling, packaging, preparation for use and sale of Fosamax into interstate commerce in
19  that Defendant knew or should have known that the product Fosamax created a high risk
20  of unreasonable, dangerous side effects, some of which, e.g. osteonecrosis and ONJ, can
21  cause extraordinary suffering.

22      42.    Defendant was negligent in the design, manufacture, testing , advertising,
23  warning, marketing, and sale of Fosamax in that they:

24      (a)    Failed to use due care in designing and manufacturing Fosamax so as
25  to avoid the above risks to individuals when Fosamax was being used to treat
26  osteoporosis and Paget's disease;

27      (b)    Failed to accompany their product with proper warnings regarding
28  all possible adverse side effects associated with the use of Fosamax and the comparative

                                                              COMPLAINT

1  severity and duration of such adverse effects, the warnings did not accurately reflect the
2  symptoms, scope or severity of the side effects;

3         (c)    Failed to conduct adequate pre-clinical and clinical testing and
4  post-marketing surveillance to determine the safety of Fosamax;

5         (d)    Failed to provide adequate instruction and warning to medical care
6  providers for the appropriate use of Fosamax;

7         (e)    Were otherwise careless or negligent.

8         43.    Despite the fact that Defendant knew or should have known that Fosamax
9  caused unreasonable, dangerous side effects which many users would be unable to
10 remedy by any means, Defendant continued to market Fosamax when there were safer
11 alternative methods of treatment.

12        44.    Defendant knew or should have known that consumers such as Plaintiff
13 would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care
14 as described above.

15        45.    Defendant's negligence was a proximate cause of Plaintiff's injuries, harm
16 and economic loss which she suffered and will continue to suffer as previously described.

17                      **THIRD CLAIM FOR RELIEF**

18              **FOR BREACH OF IMPLIED WARRANTY**

19        46.    Plaintiff incorporates by reference all preceding paragraphs as if fully set
20 forth herein.

21        47.    At all times relevant herein, Defendant impliedly warranted to members of
22 the public and health care providers that the product was of merchantable quality and safe
23 and fit for use as a treatment for osteoporosis and Paget's disease.

24        48.    Plaintiff was and is unskilled in the research, design and manufacture of
25 Fosamax and reasonably relied entirely on the skill, judgment and implied warranty of
26 Defendant in using the product.

27        49.    At all times that Defendant marketed, sold and/or distributed Fosamax for
28 use by Plaintiff, Defendant had actual or constructive knowledge of the particular purpose

                                    10

                                                    COMPLAINT

1    for which this drug was to be used by Plaintiff.

2        50.    At all times that Defendant marketed, sold and/or distributed Fosamax

3    Defendant knew or had reason to know that Plaintiff was relying and in fact did rely on

4    Defendant's implied warranties.

5        51.    Plaintiff and her physicians reasonably relied upon the skill and judgment of

6    Defendant as to whether Fosamax was of merchantable quality and safe and fit for its

7    intended use.

8        52.    Contrary to such implied warranty, Fosamax was not of merchantable

9    quality or safe or fit for its intended use, because the product was and is unreasonably

10   dangerous and unfit for the ordinary purposes for which it was used as described above

11   and Defendant has breached its implied warranty.

12       53.    As a direct and legal result of the breach of implied warranty, Plaintiff

13   suffered and will continue to suffer damages, injury, harm and economic loss as alleged

14   herein.

15              **FOURTH CLAIM FOR RELIEF**

16          **FOR BREACH OF EXPRESS WARRANTY**

17       54.    Plaintiff incorporates by reference all preceding paragraphs as if fully set

18   forth herein.

19       55.    At all times relevant, Defendant expressly represented and warranted to

20   Plaintiff and Plaintiff's agents and physicians, by and through statements made by

21   Defendant or its authorized agents or sales representatives, orally and in publications,

22   package inserts and other written materials intended for physicians, medical patients and

23   the general public, that Fosamax was safe, effective, fit and proper for its intended use.

24   In reliance upon said warranties, Plaintiff purchased said product.

25       56.    Plaintiff, along with the general public, relied directly and indirectly, upon

26   said express warranties made by Defendant, in connection with the use of Fosamax. Said

27   express warranties were part of the sale of the product, in that Defendant warranted the

28   safeness of the product.

11

57.    Fosamax does not conform to these express representations because Fosamax is not safe and has high levels of serious side effects, including disfiguring and life threatening side effects.

58.    As a direct and legal result of the breach of said warranties, Plaintiff suffered and will continue to suffer damages, injury, harm and economic loss as alleged herein.

## FIFTH CLAIM FOR RELIEF
## DECEIT BY CONCEALMENT

59.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60.    Defendant, from the time that Fosamax was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff by concealing from Plaintiff, Plaintiff's physicians and the general public, the true facts concerning Fosamax, which Defendant had a duty to disclose.

61.    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Fosamax was safe and willfully withheld and concealed information about the substantial risks of using Fosamax.

62.    Defendant represented that Fosamax was safer than other alternative medications and willfully concealed information which demonstrated that Fosamax was not safer than alternatives available on the market.

63.    At all times relevant herein, Defendant conducted a sales and marketing campaign to promote the sale of Fosamax and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of Fosamax. Defendant was aware of the foregoing, and that Fosamax was not safe, fit and effective for human consumption, the use of Fosamax is hazardous to health, and Fosamax has a serious propensity to cause serious injuries to users, including but not

12

COMPLAINT

1  limited to the injuries suffered by Plaintiff as delineated herein.

2      64.    Defendant intentionally concealed and suppressed the true facts concerning

3  Fosamax with the intent to defraud Plaintiff, in that Defendant knew that Plaintiff's

4  physicians would not prescribe Fosamax, and Plaintiffs would not have used Fosamax, if

5  they were aware of the true facts concerning the dangers of Fosamax.

6      65.    As a result of the foregoing fraudulent and deceitful conduct by the

7  Defendant, Plaintiff suffered injuries and damages as alleged herein.

8              ## SIXTH CLAIM FOR RELIEF

9              ## NEGLIGENT MISREPRESENTATION

10     66.    Plaintiff incorporates by reference all preceding paragraphs as if fully set

11 forth herein.

12     67.    From the time that Fosamax was first tested, studied, researched, evaluated,

13 endorsed, manufactured, marketed and distributed, and up to the present, Defendant made

14 false misrepresentations, as previously set forth herein, to Plaintiff, Plaintiff's physicians

15 and the general public, including but not limited to the misrepresentation that Fosamax

16 was safe, fit and effective for human consumption.  At all times relevant, Defendant

17 conducted a sales and marketing campaign to promote the sale of Fosamax and willfully

18 deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and

19 consequences of the use of the product.

20     68.    Defendant made the foregoing representations without any reasonable

21 ground for believing them to be true.  These representations were made directly by

22 Defendant, by sales representatives and other authorized agents of said Defendant, and in

23 publications and other written materials directed to physicians, medical patients and the

24 public, with the intention of inducing reliance and the prescription, purchase and use of

25 Fosamax.

26     69.    The foregoing representations by the Defendant were in fact false, in that

27 Fosamax was not safe, fit and effective for human consumption, the use of Fosamax is

28 hazardous to health, and Fosamax has a serious propensity to cause serious injuries to

13

COMPLAINT

1    users, including but not limited to the injuries suffered by Plaintiff as delineated herein.

2        70.    The foregoing representations by Defendant were made with the intention
3    of inducing reliance and the prescription, purchase and use of Fosamax.

4        71.    In reliance on the misrepresentations by Defendant, Plaintiff was induced to
5    purchase and use Fosamax.  If Plaintiff had known of the true facts and the facts
6    concealed by the Defendant, Plaintiff would not have used Fosamax.  The reliance of
7    Plaintiff upon Defendant's misrepresentations was justified because such
8    misrepresentations were made and conducted by individuals and entities that were in a
9    position to know the true facts.

10       72.    As a result of the foregoing negligent misrepresentations by Defendant,
11   Plaintiff suffered injuries and damages as alleged herein.

12                   **PUNITIVE DAMAGES ALLEGATIONS**

13          **(As to the First, Second, Fifth, and Sixth Claims for Relief, only)**

14       73.    Plaintiff incorporates by reference all preceding paragraphs as if fully set
15   forth herein.

16       74.    The acts, conduct, and omissions of Defendant, as alleged throughout this
17   Complaint were willful and malicious and were done with a conscious disregard for the
18   rights of Plaintiff and other users of the Defendant's product and for the primary purpose
19   of increasing Defendant's profits from the sale and distribution of Fosamax.  Defendant's
20   outrageous and unconscionable conduct warrants an award of exemplary and punitive
21   damages against Defendant in an amount appropriate to punish and make an example of
22   Defendant.

23       75.    Prior to the manufacturing, sale and distribution of Fosamax, Defendant
24   knew that said medication was in a defective condition as previously described herein and
25   knew that those who were prescribed the medication would experience and did
26   experience severe physical, mental, and emotional injuries.  Further, Defendant, through
27   its officers, directors, managers, and agents, had knowledge that the medication presented
28   a substantial and unreasonable risk at harm to the public, including Plaintiff and as such,

14

COMPLAINT

1  said consumers of said drugs were unreasonably subjected to risk of injury or death from
2  the consumption of said product.

3      76.    Despite such knowledge, Defendant, acting through their officers, directors
4  and managing agents for the purpose of enhancing Defendant's profits, knowingly and
5  deliberately failed to remedy the known defects in said medication and failed to warn the
6  public, including Plaintiff, of the extreme risk of injury occasioned by said defects
7  inherent in Fosamax. Defendant and its individual agents, officers, and directors
8  intentionally proceeded with the manufacturing, sale, and distribution and marketing of
9  Fosamax knowing persons would be exposed to serious danger in order to advance
10 Defendant's own pecuniary interest and monetary profits.

11     77.    Defendant's conduct was despicable, and so contemptible that it would be
12 looked down upon and despised by ordinary decent people, and was carried on by
13 Defendant with willful and conscious disregard for the safety of Plaintiff, entitling
14 Plaintiff to exemplary damages.

15     **WHEREFORE,** Plaintiff prays for judgment against Defendant as follows, as
16 appropriate to each cause of action:

17     1.    General damages in an amount that will conform to proof at time of trial;
18     2.    Special damages in an amount within the jurisdiction of this Court and
19 according to proof at the time of trial;
20     3.    Loss of earnings and impaired earning capacity according to proof at the
21 time of trial;
22     4.    Medical expenses, past and future, according to proof at the time of trial;
23     5.    For past and future mental and emotional distress, according to proof;
24     6.    For punitive or exemplary damages according to proof on the First, Second,
25 Fifth, and Sixth Causes of Action;
26     7.    Attorney's fees;
27     8.    For costs of suit incurred herein;
28     9.    For pre-judgment interest as provided by law; and

COMPLAINT

1       10.   For such other and further relief as the Court may deem just and proper.

2  Dated:    April 1, 2008

GANCEDO & NIEVES
A Limited Liability Partnership

By                        
HECTOR G. GANCEDO
TINA B. NIEVES

Attorneys for Plaintiff

16

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2       Plaintiff hereby demands trial by jury.

3  Dated: April 1, 2008

4

5                                  GANCEDO & NIEVES
                                   A Limited Liability Partnership
6

7                          By      _____
                                   HECTOR G. GANCEDO
8                                  TINA B. NIEVES

9

10                                 Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   17                          COMPLAINT